CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

SEP 2 4 2009

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| JOSEPH DONALD GREENE, | ) | |
| Plaintiff, | ) | Civil Action No. 7:09-cv-00100 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JAMES PHIPPS, et al., | ) | By: Hon. James C. Turk |
| Defendants. | ) | Senior United States District Judge |

Plaintiff Joseph Donald Greene, a Virginia inmate and self-declared "documented civil rights protestor" proceeding pro se, filed an omnibus civil rights action, pursuant to 42 U.S.C. §§ 1983, 1985, 1988,[1] and 2000aa[2] with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names thirty-five defendants who consist of Virginia Department of Corrections ("VDOC") administrators and correctional officers; Commonwealth Attorneys and their assistants; a county government and its board of supervisors; state court judges and a clerk; a bureaucrat; private attorneys; and John and Jane Does, all in their official and individual capacities. Plaintiff does not demand any particular relief but asks for "any other action on behalf of Plaintiff that this Court deems appropriate." (Compl. 21.) After screening the complaint, pursuant to 28 U.S.C. § 1915e(2), the court dismisses the complaint.

Plaintiff alleges in his "preliminary statement" that he is the subject of the defendants' conspiracies in:

retaliation for protected petitioning against officers of the Commonwealth of

---

[1] Section 1988 allows a prevailing party in a § 1983 action to recover attorney's fees; it is not a separate cause of action.

[2] Under § 2000aa, the government, in connection with the investigation or prosecution of a criminal offense, is prohibited from searching for or seizing any documentary or work product materials "possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication." Plaintiff does not link any of the non-VDOC defendants' actions to a violation of § 2000aa.

Virginia, and those acting in concert with them, for conspiracy, corruption, malicious prosecution, malicious abuses of process, deliberate ministerial failures, unlawful imprisonment, use of torture methods prohibited even for enemy combatants, obstruction of justice, threatening a material witness, premeditated retaliatory assault, destruction and/or secretion of public records intended for dissemination, forgery of public records, obstructions of access to Courts and destruction of Untied States Postage, fraud, slander and/or defamation of character with intent to discredit protestor, misuse and/or nonuse of public office, and the unconstitutional immunity created by Heck v. Humphrey, 512 U.S. 477 (1994), which has abrogated[] (i) the protected petitioning clause of the First Amendment; (ii) the unlawful imprisonment prohibitions of the Fourth Amendment; (iii) the confrontation and fair and impartial proceeding provisions of the Sixth Amendment; (iv) the cruel and unusual proscriptions of the Eighth Amendment; (v) and the protections which used to be available under the substantive due process and equal protection clauses of the Fourteenth Amendment, of the United States Constitution.

(Compl. 2 ¶ 1.)

Plaintiff admits to filing a previous, related civil rights suit in this district in April 2002 that comprised thirty-three defendants in a hundred page complaint.[3] The court dismissed the complaint without prejudice in August 2002, explaining that plaintiff failed to exhaust state court remedies and other claims were barred by Heck v. Humphrey, 512 U.S. 477 (1994). (Compl. 3-4.) See Greene v. McGraw, No. 7:02-cv-00626 (W.D. Va.). Plaintiff alleges that several of his claims stem from retaliation for filing that civil rights action.

I.

Plaintiff's present complaint paints with a broad brush and attempts to join together in one action a variety of unrelated legal claims arising from two distinct periods, concerning either his conviction or his incarceration at Deep Meadow Correctional Center. Not only does

---

[3]The only defendant named in both the previous action and the present action is Assistant Commonwealth Attorney Marian Kelley.

plaintiff's complaint join in one action various unrelated legal claims, he seeks redress against a bureaucrat (James Phipps); judicial officers (Judge Joshai Showalter, Clerk Erica Williams, and Judge Thomas Warren); courts (Supreme Court of Virginia and the Court of Appeals of Virginia); law enforcement officers (Tommy Whitt and John Doe Smith); the County of Montgomery; elected officials (Montgomery County Board of Supervisors, Robert F. McDonnell, and Bill Mimms); prosecutors (Bradley Finch, Marian Kelley, and Robert Beasley); private attorneys (Raphael Benedict Hartley, III, Esq.; Christopher Tuck, Esq.; Sandra Wright, Esq.; and John Doe, Esq.[4]); and correctional officers and administrators for the VDOC (Rudolph Gregory, Jane Doe Lewis, John Doc Redden, Anita Long, G.K. Washington, Anita Bryant, Gloria Robinson, Nicholson Broughton, Elizabeth Lane, Alton Baskerville, Marcia Seay, John Doe Blackwell, Samuel Pruett, R. Jamison, Douglas Gourdine, and V. Menefee (hereinafter referred to as "VDOC defendants")). By so doing, however, plaintiff both runs afoul of the joinder rules under the Federal Rules of Civil Procedure and the filing fee requirements of the Prisoner Litigation Reform Act ("PLRA").

The nucleus of plaintiff's present complaint revolves around plaintiff's designation under Virginia law in December 1998 as being a Habitual Traffic Offender by the Roanoke County Circuit Court, and plaintiff alleges the following relevant facts. (Compl. 11 ¶¶ 3-4.) Plaintiff petitioned the Circuit Court of Roanoke County in April 2006 to remove his habitual offender status in accordance with the "1993 Order of adjudication." (Id.) James Phipps, former Director of the Alcohol Safety Action Program of the Roanoke Valley, obstructed this process, allegedly

---

[4]Plaintiff alleges that John Doe, Esq., is appointed by the Circuit Court of Powhatan to mediate disputes at the Deep Meadow Correctional Center between inmates and between inmates and staff. (Compl. 8 ¶18.)

3

as retaliation against plaintiff. In August 2006, plaintiff was charged with a traffic offense within the jurisdiction of the Montgomery County Circuit Court after being designated a habitual offender. (Id. 12.) The Montgomery County Circuit Court appointed Sandra Wright, Esq. to represent him.

In December 2006, Montgomery County Commonwealth Attorney Bradley Finch offered to reduce plaintiff's felony traffic charge to a misdemeanor if plaintiff agreed to waive his preliminary hearing, did not oppose the Commonwealth's evidence, preemptively agree to plead guilty to the misdemeanor charge, and, notably, obtain a valid driver's license before trial. Plaintiff alleges that Finch subsequently discovered after the December 2006 offer that plaintiff filed a federal civil action, which was already dismissed in August 2002, against the Roanoke County Commonwealth Attorney, Roanoke County officials, and other state officials. Finch allegedly then colluded with Phipps to obstruct the restoration of plaintiff's driving privileges.

Plaintiff alleges that on February 1, 2007:

> Finch submitted to Defendant [Sandra] Wright, appointed counsel for Plaintiff/Victim, a forged plea agreement-scheduling contract confirming Plaintiff's acceptance of his "previously made offer" for misdemeanor reduction of the alleged habitual offender charge. This contract was received as a public record, certificate, and attestation relating to the December 18, 2006, declaration of privileges by his office, wherein, Defendant Wright, Plaintiff/Victim, and Katherine Messenger received such as legal proof, without knowing same to be forged. Unknown to Plaintiff/Victim, Defendant Finch believed he would not have to bre[a]ch his declaration to Plaintiff so he could satisfy a conspiratorial undeclared agreement with Defendant Phipps and maliciously send Plaintiff/Victim unlawfully to prison. Because, it appeared that as a direct result of the obstructions and malicious abuses of process presented by Defendant Phipps, Plaintiff would not be able to complete the agreement and obtain his driver's license before trial.

(Id. 12) (citations omitted). Later in February 2007, plaintiff pled guilty to an outstanding

4

probation violation in Roanoke County Circuit Court and Roanoke County Circuit Court Judge Swanson wanted written confirmation of Finch's plea offer. (Id. 13 ¶ 1.) Plaintiff received a letter on March 13, 2007, from Phipps stating Phipps intended "to arbitrarily obstruct the lawfully initiated restoration process of his driving privileges." (Id.) On October 5, 2007, Phipps "committed perjury and maliciously lodged a criminal investigation" against plaintiff when Phipps claimed that plaintiff failed to update his Virginia sex offender registry address as a result of his forcible sodomy conviction.

Plaintiff alleges he obtained a valid "Order Restoring Driving Privileges" from the Roanoke County Circuit Court on October 30, 2007. However, the Roanoke County Circuit Court vacated the order on the same day, which allegedly "required involvement by Phipps in Plaintiff's restoration process, and . . . Phipps had his position as the Director of the [Virginia Alcohol Safety Action Program of the Roanoke Valley] terminated. This was pursuant to a verbal agreement that Plaintiff not seek damages upon the misconduct by . . . Phipps but the defendants have bre[a]ched the agreement." (Id. 13 ¶ 8.)

Nearly a year after Finch and plaintiff discussed a plea offer for his traffic violation, plaintiff possessed a valid driver's license and appeared for trial at the Montgomery County Circuit Court on November 2, 2007. (Id. 14 ¶ 1.) Plaintiff "was coerced to accept a plea agreement for a felony conviction[] and sentence of five years . . . with four suspended." (Id.) Plaintiff told the circuit court about the breach of the plea agreement between him and Finch, but Finch denied that any plea agreement existed. The circuit court accepted plaintiff's felony guilty plea. However, Montgomery County Circuit Court Judge Grubbs vacated the guilty plea upon plaintiff's subsequent motion to vacate the conviction, relieved plaintiff's court-appointed

5

counsel, appointed new counsel, and recused himself from further proceedings.

Plaintiff alleges that during a January 24, 2008, pre-trial evidentiary hearing, Lieutenant John Doe Smith of the Montgomery County Sheriff's Department escorted plaintiff:

> to a private room, removed [plaintiff's] chains and shackles, stripped him naked, and affixed a 50,000 [v]olt shock belt to his back and abdomen. After replacing the chains and shackles, he was shown a remote control trigger. Defendant Smith . . . advised [p]laintiff[] that "he had come up on the Commonwealth's [r]adar. . . . He furthered that if he was to "say anything out of line while he was in the courtroom that he would be hit with it, that it would be the most painful thing he ever experienced in his life, and promised that he would regret it." Defendant Smith was very specific about the injuries the device would inflict and upon witnessing the fear [p]laintiff was suffering[,] he stated[,] "might kill you, and it's been known to go off by itself."

> This visibly shocked the conscience of Judge Showalter upon discovery[;] he ordered the shock device removed from [p]laintiff[], and over objection by the Clerk[,] he [o]rdered the record to be cut off. . . .

(Id. 14 ¶¶ 5-6; Ex. 18 (126-50).)

Judge Showalter then ordered Finch into chambers. Upon returning from chambers, Judge Showalter willingly became involved in the conspiracy because he ruled that plaintiff could not discuss certain evidence during trial. (Id. 14 ¶¶ 6-15.) Plaintiff was later convicted, noted several appeals, and was generally unsatisfied with all of the attorneys, judges, and state courts involved with his proceedings.

## II.

The court must dismiss any action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief can be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest

6

which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions. . . ." Id. Therefore, the plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although the court liberally construes pro se complaints, the court does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). In order to state a claim under § 1985(3), a plaintiff must establish the following four elements: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an

7

overt act committed by the defendants in connection with the conspiracy." Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Moreover, a plaintiff must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights. Id. at 1377. Conclusory allegations of a conspiracy are insufficient to state a claim. Id.

For screening the complaint pursuant to 28 U.S.C. § 1915(e)(2), the court will determine the defendants' exposure to liability in turn. Plaintiff specifically asserts sixteen claims, and the court must liberally construe his pro se complaint. (Compl. 18-21.) See Haines v. Kerner, 404 U.S. 519, 520 (1972) (requiring liberal construction of pro se complaints). The court will address claims one through thirteen with the applicable defendants while screening the complaint. Claims fourteen through sixteen specifically relate to the VDOC defendants and do not relate to the nucleus of plaintiff's complaint.

A.     VDOC correctional officers and administrators.

Plaintiff names numerous VDOC correctional officers and administrators as defendants for events arising from facts completely separate from the aforementioned claims surrounding his habitual offender conviction. Regarding the VDOC defendants, plaintiff complains about a policy change at the Deep Meadow Correctional Center that "prohibited [i]nmates from seeking safety in the Special Housing Unit unless there was an incident of assault."[5] (Compl. 4 ¶ 1.) While that policy was in effect, plaintiff anticipated being attacked but was unable to seek refuge within the Special Housing Unit. Plaintiff was subsequently attacked, and VDOC officials transferred plaintiff to the Coffeewood Correctional Center on August 12, 2008. (Id. 4 ¶ 3, 5 ¶ 1(a).) Plaintiff seeks to impose liability upon the VDOC defendants for these events.

---

[5]Plaintiff alleges that he arrived at Deep Meadow Correctional Center on May 9, 2008. (Compl. 5 ¶ 1(a).)

8

Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to only join "either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Rule 20 of the Federal Rules of Civil Procedure allows the joinder of several parties if the claims arose out of the same transaction or occurrence, or series thereof, and contain a question of fact or law common to all the defendants. See 6A Wright, Miller and Kane, Federal Practice and Procedure § 1583 (2d ed. 1990) (noting that, under Rules 18(a) and 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed). Under these rules, "a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question." Green v. Denning, No. 06-3298, 2009 U.S. Dist. LEXIS 15738, 2009 WL 484457 (D. Kan. Feb. 26, 2009). These procedural rules apply with equal force to pro se prisoner cases. Indeed, "[r]equiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents 'the sort of morass [a multiple claim, multiple defendant] suit produce[s]." Id. (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)).

Moreover, permitting plaintiff to pay one filing fee yet join disparate claims against dozens of parties flies in the face of the letter and spirit of the PLRA. Compliance with the joinder rules "prevents prisoners from 'dodging' the fee obligation and '[three]-strikes' provision of the PLRA." Id. As the court noted in Green:

> To permit plaintiff to proceed in this single action on unrelated claims against different defendants that should be litigated in separate action(s) would allow him to avoid paying the filing fees required for separate actions, and also allow him to circumvent the three strikes provision for any new and unrelated claims that might be found to be [a] "strike" under 28 U.S.C. § 1915(g).

9

2009 U.S. Dist. LEXIS 15738, *9; 2009 WL 484457, at *3. By naming thirty-five defendants at multiple locations and institutions and including numerous transactions or occurrences, plaintiff's complaint does not comply with Rules 18 and 20. A careful reading of plaintiff's claims reflects that the only common thread the claims share is that the various defendants allegedly violated plaintiff's constitutional rights at different times, in different places, and in different ways. However, plaintiff's claims concern events either before or after his incarceration at Deep Meadow Correctional Center.

By joining of all of these claims and defendants in one case, plaintiff seeks to bypass the PLRA's three-strikes provision and the filing fee requirement. See Patton v. Jefferson Correctional Center, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision); Pruden v. SCI-Camp Hill, 2007 U.S. Dist. LEXIS 36874, at *6 (M.D. Pa. 2007) ("In being permitted to combine in one complaint several separate, independent claims, Plaintiff is able to circumvent the filing fee requirements of the PLRA."); Hubbard v. Haley, 262 F.3d 1194 (11th Cir. 2001) (refusing to allow the joinder of multiple plaintiffs attempting to circumvent the PLRA's unambiguous requirement that each prisoner be required to pay the full amount of the filing fee); Valdez v. Dretke, No. H-04-2038, 2007 U.S Dist. LEXIS 54851 (S.D. Tex. 2007) (denying amendment of prisoner complaint making allegations against other defendants and involving more than one transaction).

Rule 21 of the Federal Rules of Civil Procedure states that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just

terms, add or drop a party. The court may also sever any claim against a party." Accordingly, plaintiff's claims against the VDOC defendants, some of which are not within the Western District of Virginia, may not proceed as it improperly joins together multiple claims and multiple defendants. Accordingly, the court dismisses the claims against the VDOC defendants without prejudice for improper joinder and terminates these parties as defendants to this action.

      B.      Relief from state court judgment that would accelerate his release from custody.

      To the extent plaintiff may be challenging his state court convictions and requesting a speedier release from custody, his sole remedy in federal court is a properly filed petition for a writ of habeas corpus. See Edwards v. Balisok, 520 U.S. 641, 645-47 (1997) (stating that § 1983 damages claim arguing that due process rights violations resulted in loss of good-time credits should be brought as habeas corpus petition); Heck v. Humphrey, 512 U.S. 477, 486-88 (1994) (stating that a § 1983 claim that would necessarily demonstrate the invalidity of confinement or its duration should be brought as a habeas claim); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (stating that writ of habeas corpus is sole federal remedy when inmate challenges fact or duration of imprisonment and relief sought is finding that the inmate is entitled to a speedier release). Therefore, plaintiff may not seek an order from a civil rights action that would release him from custody quicker than what an imposed sentence requires, and the court dismisses plaintiff's claims against the remaining defendants to the extent the claims seek to overturn his conviction or otherwise enable him a speedier release from custody without prejudice.

      C.      Suit against the remaining defendants in their official capacities as representatives of the Commonwealth of Virginia.

      "[A] suit against a state official in his or her official capacity is not a suit against the

11

official but rather is a suit against the official's office." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). An "official capacity" suit against a state official for damages "is no different from a suit against the State itself." Id. at 71 & n.10. Therefore, to the extent plaintiff seeks unspecified damages from the defendants in their official capacities, he ultimately seeks to recover money from the Commonwealth of Virginia. However, states and governmental entities that are considered arms of the State are immune from suit under the Eleventh Amendment and are not "persons" under § 1983. See Howlett v. Rose, 496 U.S. 356, 365 (1990); McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987); Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 564 (W.D. Va. 2000) (officials acting in their official capacity are not persons under § 1983).

However, a state official is a "person" for purposes of § 1983 when a state official is sued in his or her official capacity for prospective injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 71 & n.10. Plaintiff does not demand any particular relief but asks for "any other action on behalf of Plaintiff that this Court deems appropriate." (Compl. 21 ¶ 3.) Rule 8(a)(3) of the Federal Rules of Civil Procedure provides in pertinent part that "a pleading which sets forth a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." This Rule requires a plaintiff to provide a "'concise statement identifying the remedies and the parties against whom relief is sought. . . .'" Goldsmith v. City of Atmore, 996 F.2d 1155, 1161 (11th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1255, at 366 (2d ed.1990)).

Although federal courts are courts of both equity and law, they still recognize the

distinctions between the two causes of action.  Coca-Cola Co. v Dixi-Cola Laboratories, Inc.,155

F2d 59, 68 (4th Cir. 1946).  "According to well-established principles of equity, a plaintiff

seeking a permanent injunction must satisfy a four-factor test before a court may grant such

relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  Plaintiff

patently fails to establish any such entitlement to equitable relief.  Inasmuch as plaintiff seeks to

recover unspecified damages against the defendants in their individual capacities, the court will

continue to screen the complaint.

      D.     Judicial officers and private attorneys.

     Plaintiff attempts to impose liability on courts, judges, and court staff who were involved

with plaintiff's criminal proceedings.  Judge Joshai Showalter presided over plaintiff's criminal

proceedings in Montgomery County Circuit Court after Judge Grubbs recused himself.  (Compl.

5 ¶ 3.)  Montgomery County Circuit Court Clerk Erica Williams received, filed, and processed

plaintiff's filings with the circuit court.  (Id. 6 ¶ 5.)  Judge Thomas Warren of the Circuit Court of

Powhatan County was responsible for appointing plaintiff an attorney while plaintiff was at Deep

Meadow Correctional Center.  (Id. 8 ¶ 16.)  Raphael Hartley, III, Esq.; Christopher Tuck, Esq.;

and Sandra Wright, Esq. are attorneys who plaintiff retained or were court appointed to represent

him in his habitual offender proceedings.  (Id. 6 ¶ 10, 7 ¶¶ 11-12.)  The judges of the Supreme

Court of Virginia and the Court of Appeals of Virginia did not grant plaintiff's appeals or

petitions. (Id. 7 ¶¶ 14-15.)

It is well-settled that a judge is "absolutely immune from a claim for damages arising out of his judicial actions." Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985) (citing Bradley v. Fisher, 80 U.S. (13 Wall.) 335 (1872)). "[J]udges of courts of superior or general jurisdiction are not liable [in] civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. 349, 355-56 (1978). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Id.

It is also well-recognized that absolute judicial immunity also applies to quasi-judicial officers and other public officials acting pursuant to a court directive. See Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir. 1969). The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel such as clerks because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts. . . .'" Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992) (quoting Scruggs v. Moellering, 870 F.2d 376, 377 (7th Cir. 1989)). See also Ashbrook v. Hoffman, 617 F.2d 474 (7th Cir. 1980) (collecting cases on immunity of court support personnel). Moreover, an attorney, whether retained, court-appointed, or a public defender, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under § 1983. See Deas v. Potts, 547 F.2d 800 (4th Cir. 1976) (private attorney); Hall v. Quillen, 631 F.2d 1154, 1155-56 & nn.2-3 (4th Cir. 1980) (court-appointed attorney); Polk County v. Dodson, 454 U.S. 312, 317-24 & nn.8-16

14

(1981) (public defender).

Plaintiff establishes that the various judges and clerk acted within their jurisdiction by presiding over plaintiff's judicial proceedings and routing court documents. Plaintiff's complaints about various private attorneys, whether court-appointed or not, are not cognizable under § 1983 as these private attorneys did not act under color of state law. Therefore, plaintiff seeks damages from judicial defendants who are immune from damages and from attorneys who did not act under color of state law. Accordingly, the court dismisses as frivolous plaintiff's claims against Judge Joshai Showalter; Clerk Erica Williams; Judge Thomas Warren; the judges of the Supreme Court of Virginia; the judges of the Court of Appeals of Virginia; Raphael Benedict Hartley, III, Esq.; Christopher Tuck, Esq.; Sandra Wright, Esq.; and John Doe, Esq., and terminate them as defendants to this action.

E.      Sheriff and Deputy.

Tommy Whitt is the Sheriff of Montgomery County, and plaintiff alleges that he is "responsible for the proper training of his deputies, setting policy, and protecting the citizens within his jurisdiction. He has supervisor[y] responsibility to act and/or intervene when made aware of improper and overreaching conduct by his subordinate officers." (Compl. 6 ¶ 7.) Plaintiff alleges that, during a break in state court proceedings, Lieutenant John Doe Smith of the Montgomery County Sheriff's Department escorted plaintiff to a private room and attached a shock belt to him. Smith allegedly said that he would shock plaintiff if he said anything "out of line" in the courtroom. (Id. 14 ¶¶ 5-6; Ex. 18 (126-50).) Plaintiff does not claim that he was ever shocked nor describes what happened to the shock belt or defendant Smith after these alleged events occurred. Furthermore, the hearing resumed anew after the judge ordered the shock belt

15

be removed.

After taking plaintiff's factual allegations as true in accordance with Rule 12(b)(6), plaintiff fails to state a claim upon which relief may be granted. Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983. Henslee v. Lewis, 153 Fed. App'x 178, 180 (4th Cir. 2005) (unpublished) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (verbal threats causing fear for plaintiffs life not an infringement of a constitutional right). Moreover, plaintiff fails to establish how the shock belt frustrated his access to the courts since he was in court for a hearing, the circuit court judge knew about the device and ordered its removal, and plaintiff was not prevented from testifying or seeking redress in court. See Lewis v. Casey, 518 U.S. 343, 354 (1996) (requiring an injury for court access claim); Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978) (threat of physical harm must restrict judicial access to implicate constitutional right to access the courts). Accordingly, the court dismisses the claims against John Doe Smith for failing to state a claim upon which relief may be granted.

Plaintiff also can not recover damages from Sheriff Whitt in his individual capacity. Plaintiff's only complaint against Sheriff Whitt is that he failed to adequately supervise his deputy, presumably defendant Smith. Supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior. See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982). Therefore, supervisory liability under § 1983 must be supported with

16

evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F. 3d 791, 799 (4th Cir. 1994) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)). The plaintiff must show that a supervisor's inaction amounted to deliberate indifference or tacit authorization of the offense practiced. Miltier, 896 F.2d at 854. Supervisory liability is not established merely by showing that a subordinate was deliberately indifferent to a plaintiff's needs. Id.

Plaintiff clearly fails to establish any of the Miltier factors because plaintiff does not describe or allege any facts to associate Sheriff Whitt with defendant Smith and the shock belt. Instead, plaintiff seeks to impose liability on Sheriff Whitt because he would be a deputy's supervisor. Accordingly, the court dismisses the claims against Sheriff Whitt as frivolous for seeking to impose § 1983 liability under a meritless legal theory, respondeat superior.

F.      The County of Montgomery, its elected officials, and the Virginia Attorneys General.

Plaintiff also names the County of Montgomery ("County") and its Board of Supervisors as defendants. Plaintiff alleges that the County "promulgate[s] county ordinance and policy. . . . [and] ha[s] a direct, and/or indirect municipal responsibility to screen, adequately train, supervise, and properly discipline their officers." (Compl. 6 ¶ 9.)

Plaintiff also alleges that Robert F. McDonnell, the former Virginia Attorney General, "is

17

responsible for creating and/or implementing policy. . . . [and] has a supervisory responsibility to act and/or intervene when made aware of misconduct and/or abuses of office by state officers."[6] (Compl. 7 ¶ 13.)

However, plaintiff does not discuss any facts or any other claim relevant to the County, its Board of Supervisors, or the Attorneys General. As discussed supra, it is well settled that respondeat superior is not a sufficient basis to imposed § 1983 liability. Accordingly, the court dismisses the claims made against the County of Montgomery, the Montgomery County Board of Supervisors, Robert F. McDonnell, and Bill Mimms as frivolous.

G.    Prosecutors.

Plaintiff also names as defendants Bradley Finch, the Commonwealth Attorney for Montgomery County; Marian Kelley, an Assistant Commonwealth Attorney for Roanoke County; and Robert Beasley, the Commonwealth Attorney for Powhatan County.[7] (Compl. 6 ¶¶ 4, 6; 8 ¶ 17.) Prosecutors are absolutely immune from § 1983 damages claims in circumstances where they are engaged in a prosecutorial function if the conduct of the prosecutor in question was "intimately associated with the judicial phase of the criminal process. . . ." Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). See Burns v. Reed, 500 U.S. 478, 483 (1991). Prosecutors are cloaked by absolute immunity once judicial proceedings against an individual have commenced. See Goldstein v. Moatz, 364 F.3d 205, 213-14 (4th Cir. 2004) (distinguishing

---

[6]Plaintiff also names Bill Mimms as a defendant along with Robert McDonnell, but plaintiff does not allege anything against Mimms. Mimms succeeded McDonnell as Virginia's Attorney General. Therefore, plaintiff named Mimms as an officeholder and not for any personal action. The court construes plaintiff's claim against Mimms as a claim against him in his official capacity. As already discussed, plaintiff does not seek a permanent injunction and the Commonwealth of Virginia is otherwise immune from damages. Accordingly, plaintiff's claims against the Commonwealth of Virginia vis a vis Bill Mimms fails.

[7]Powhatan County is within the Eastern District of Virginia. 28 U.S.C. § 127(a).

18

a prosecutor's investigative function, which does not trigger absolute immunity, as opposed to acting as an advocate, during which absolute immunity would apply). Therefore, Finch, Kelly, and Beasley are immune from damages to the extent any of plaintiff's claims arose while they prosecuted plaintiff. The court further analyzes the claims plaintiff asserted against the prosecutor-defendants.

    1. Beasley

Plaintiff merely alleges that Beasley is responsible for "preparing an order for appointment of an Institutional Attorney for [p]laintiff[] while [he was] at Deep Meadow Correctional Center." (Compl. 8 ¶ 17.) However, plaintiff does not state any relevant facts nor specifically alleges a claim against Beasley. Accordingly, the court terminates Beasley as a defendant to this action.

    2. Kelley

Plaintiff alleges that Kelley "did publicly slander and defame" him with the "use of profanity, and announced intentions of vindictive prosecution" in retaliation for previous civil rights lawsuits. (Id. 19.) Plaintiff also alleges that Kelley, in conjunction with Finch and Smith, harassed and threatened to kill, assault, and mercilessly torture him to prevent him from testifying in court. (Id.)

Section 1983 provides a vehicle for the vindication of federally-protected rights, not rights arising under and secured by state law. See Weller v. Dep't of Social Services for the City of Baltimore, 901 F.2d 387 (4th Cir. 1990). Plaintiff's reputation is protected through state tort law, and a mere allegation of damage to one's reputation and character fails to implicate any liberty or property interests protected by the Constitution. Id. See, e.g., Lamb v. Rizzo, 391 F.3d

1133, 1139 (10th Cir. 2004); <u>Underwager v. Channel 9 Austl.</u>, 69 F.3d 361, 366 (9th Cir. 1995).

Absent a claim that defamation caused plaintiff an injury to a federally protected right, a bare

allegation of defamation is not sufficient to state a § 1983 claim. <u>See</u> <u>Paul v. Davis</u>, 424 U.S.

693, 711-12 (1976). Therefore, plaintiff's allegations of slander and defamation are not

cognizable in this § 1983 action because he fails to link how any alleged defamation implicates

his federal constitutional rights, and his attempt to prosecute a state law claim under § 1983 is

dismissed without prejudice as frivolous.

      As to plaintiff's claim that Kelley, Finch, and Smith harassed and threatened to kill,

assault, and mercilessly torture him to prevent him from testifying in court, the plaintiff fails to

state a claim. A plaintiff may not rely on mere labels and conclusions to allege a conspiracy or

prosecute a civil rights suit. Beyond merely concluding that Kelley, Fitch, and Smith violated

plaintiff's rights in that manner, plaintiff does not describe how these defendants accomplished

such violations or conspired in any way. <u>See</u> <u>Simmons</u>, 47 F.3d at 1377 (conclusory allegations

of a conspiracy do not state a claim).

      Liberally construing the complaint, plaintiff similarly fails to prove a violation of the right

of access to the courts. The United States Constitution guarantees a prisoner the right of

meaningful access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 824, 828 (1977). However,

prisoners are only entitled access to pursue direct appeals, habeas review, or civil rights actions.

<u>Lewis</u>, 518 U.S. at 354. "[A]ccess to the courts may be satisfied either by availability of legal

materials, by counsel, or by any other appropriate devise of the State." <u>Cruz v. Hauck</u>, 515 F.2d

322, 331 (5th Cir. 1975). A plaintiff must show some actual injury resulting from a denial of

access in order to allege a constitutional violation. <u>Lewis</u>, 518 U.S. at 349-52.

As evidenced by his complaint, plaintiff admits to having counsel throughout his criminal

proceedings and post-conviction appeals. Therefore, plaintiff's constitutional right to access the

courts was already ensured by counsel. Plaintiff further fails to state a claim because he does not

establish any actual injury from any alleged denial of access.

      3.     Finch

Plaintiff alleges that Bradley Finch, "in a continuing conspiracy with [d]efendant

Phipps[,] did maliciously forge a public document and obstruct justice by baring Plaintiffs access

to the Circuit Court of Roanoke County, and thereby with knowledge caused [p]laintiff to be

unlawfully imprisoned for three days in the Lynchburg Regional Jail." (Compl. 19 "Claim IV.")

Plaintiff further alleges against Kelley and Finch that they:

> with violence, did affirmatively conspire to expedite a malicious prosecution
> [of] [p]laintiff, and have him unlawfully imprisoned with the specific intent
> to prohibit him from obtaining an available preliminary injunction against the
> current vindictive prosecut[ion], and further foreclose his efforts to reopen
> the judgment in a previous civil rights complaint in the United States District
> Court styled as Greene vs McGraw, and otherwise, extortionately, with
> knowledge, avoid criminal and civil liability under the common-law
> immunity accorded under Heck vs. Humphrey.

(Compl. 20 "Claim X.")

Liberally construing plaintiff's allegations into a constitutional claim, the court considers

plaintiff's argument as seeking to impose § 1983 liability for Finch's alleged malicious

prosecution of the plaintiff. A malicious prosecution claim under § 1983 "is simply a claim

founded on a Fourth Amendment seizure that incorporates elements of the analogous common

law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). See

Graham v. Connor, 490 U.S. 386, 396-97, 399 (1989) (stating Fourth Amendment seizure injury

is objective and malice is not an element, unlike the common-law tort). However, "§ 1983 actions seeking damages for unconstitutional arrest or confinement imposed pursuant to legal process – claims most analogous to the common-law tort of malicious prosecution – must allege and prove a termination of the criminal proceedings favorable to the accused[;] such claims do not accrue until a favorable termination is obtained." Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996). See Heck v. Humphrey, 512 U.S. 477 (1994) (defining favorable termination as when "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . ."). However, plaintiff clearly illustrates that he is still confined for his crimes and fails to establish any favorable termination. Accordingly, plaintiff's attempt to recover damages without favorable termination pursues a meritless legal theory, and the court dismisses the claim without prejudice as frivolous. See Omar v. Chasanow, No. 08-8440, 2009 U.S. App. LEXIS 5681 at *1-2 (4th Cir. March 18, 2009) (per curiam) (modifying district court's dismissal with prejudice under Heck to be dismissed without prejudice to allow plaintiff to refile if favorable termination occurs).

If the court construes plaintiff's claims against Finch as a breach of a plea agreement, plaintiff fails to state a constitutional claim because he fails to establish that any plea agreement existed. See Puckett v. United States, 129 S. Ct. 1423, 1430 (2009) ("[P]lea bargains are essentially contracts."); Santobello v. New York, 404 U.S. 257, 262 (1971) (stating due process rights implicated when prosecutor does not fulfill promises in a plea agreement). Plaintiff acknowledges that he and Finch entered into plea negotiations for a guilty plea about a misdemeanor guilty plea in 2006, but plaintiff pled guilty to a felony conviction in 2007.

22

(Compl. 14 ¶¶ 1, 4.) Therefore, plaintiff's felony guilty plea did not rest "in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration" because the term of the agreement was to enter a misdemeanor guilty plea, which plaintiff did not do. See Santobello, 404 U.S. at 262. Even if this conviction resulted in an alleged breach of the plea negotiations that constituted a contract, plaintiff had this conviction vacated, curing any alleged defect in due process and voiding any plea agreement.[8] See Puckett, 129 S. Ct. at 1430 ("If those [contractual] obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, i.e., to withdraw his plea.) Therefore, plaintiff fails to establish the existence of any plea agreement or a related breach by Finch, and, accordingly, the court dismisses this claim as frivolous because any plea agreement would have been voided when the circuit court vacated the first criminal judgment.

H.      James Phipps

Plaintiff alleges that Phipps, former Director of the Virginia Alcohol Safety Action Program ["VASAP"] of the Roanoke Valley, "maliciously abuse[d] [p]lainitiff's [due] process rights[] and obstruct[ed] the restoration of [plaintiff's] driving privileges in retaliation for prior petitioning and civil rights actions against the Circuit Court of Roanoke County . . . costing Plaintiff unnecessary fees[] and depriving him of his privilege to drive without authority to do

_____

[8]Moreover, plaintiff does not describe how or why the circuit court entered his subsequent criminal judgment after the circuit court vacated the first criminal judgment – whether convicted by a jury, judge, or guilty plea. Plaintiff simply states, "On February 1, 2008, [t]he [Circuit] Court summoned plaintiff, whereupon, Judge Showalter entered the conviction, and for appellate purposes substituted counsel. . . ." (Compl. 15 ¶ 2.)

23

so."[9]  (Id. 18, "Claim 1.")  Plaintiff argues that Phipps violated due process by "contact[ing] Brad

Finch regarding the alleged traffic violation pending in Montgomery County." (Id. 12.)  Plaintiff

further alleges that Phipps committed fraud and perjury by maliciously causing a Virginia State

Police investigation about whether plaintiff updated his address on the Virginia Sex Offender

Registry.  (Id. 18, "Claim 2.")

      A Virginia court may, "for good cause shown" and "in its discretion," restore a habitual

offender's driving privilege after a five-year period "on whatever conditions the court may

prescribe, subject to other provisions of law relating to the issuance of driver's licenses. . . ." Va.

Code § 46.2-360(1).  The circuit court must review evidence and be "satisfied" that the person's

driving is no longer a threat to himself or others; the driver was addicted to drugs at the time of

the conviction; and the driver is no longer addicted to alcohol or drugs.  Id.  Notably, the statute

also states, "However, prior to acting on the petition [to have privileges restored], the court shall

order that an evaluation of the person be conducted by a [VASAP] and recommendations

therefrom be submitted to the court."  Id.

      Plaintiff alleges that Phipps, while acting as the former Director of the VASAP of the

Roanoke Valley, "overs[aw] the evaluation process of those adjudicated for driving under the

influence of alcohol and illegal drugs, and admittedly had no authority over [p]laintiff's

proceedings."  (Compl. 5 ¶ 2.)  Virginia law required the circuit court to order VASAP, or Phipps

as its Director, to submit an evaluation and recommendation for restoring plaintiff's driving

privileges.  "A judge's absolute immunity extends to public officials for acts they are specifically

---

[9]As plaintiff acknowledges, driving privileges by themselves do not implicate any federal constitutional right.

24

required to do under court order or at a judge's direction." Martin v. Hendren, 127 F.3d 720, 721 (8th Cir. 1997) (internal quotation marks omitted). Inasmuch as Phipps was responsible for "frustrating" plaintiff's restoration of driving privileges by submitting an adverse recommendation pursuant to a court order, plaintiff seeks damages from a person immune from relief because Phipps would be covered by absolute quasi-judicial immunity. See supra II. D. See, e.g., Imbler, 424 U.S. at 420-26.

Even if Phipps did not have absolute quasi-judicial immunity, plaintiff's speculative allegation of Phipps' involvement is simply that the circuit court vacating its order restoring plaintiff's driving privileges obviously "required involvement by Phipps in Plaintiff's restoration process. . . ." (Compl. 13 ¶ 8.) However, the circuit court had the discretion to vacate its own order regardless of anything Phipps may have said to anyone else. A due process claims that merely rest on an allegation that someone "said something" to the circuit court as a catalyst for the circuit court to vacate its own order under its own discretion is not actionable in a § 1983 damages suit against a bureaucrat in his individual capacity.

Plaintiff also claims that Phipps violated his constitutional rights by "maliciously lodg[ing] a criminal investigation" by the Virginia State Police as to whether plaintiff properly updated his address on the Virginia Sex Offender registry. However, plaintiff fails to establish that Phipps acted under color of state law when making the accusation. Even if Phipps acted under color of state law, plaintiff can not establish malicious prosecution because he does not even allege that a prosecution was ever begun, something he surely would have alleged in his omnibus complaint had it happened. See Lambert, 223 F.3d at 260 (describing malicious prosecution). Therefore, plaintiff fails to establish that Phipps caused any constitutional

25

deprivation, and the court dismisses the claims against Phipps as frivolous.

III.

For the foregoing reasons, the court dismisses the claims against the VDOC defendants without prejudice for improper joinder and terminates them as defendants in this action. The court terminates Robert Beasley as a defendant because plaintiff does not assert a claim against him. The court dismisses the claims against defendant Smith for failing to state a claim upon which relief may be granted and dismisses the malicious prosecution claim against defendant Finch and the defamation claim against defendant Kelley without prejudice as frivolous. The court dismisses plaintiff's conspiracy claims for failing to state a claim upon which relief may be granted, and the court dismisses the remaining claims as frivolous.[10] The court declines to exercise supplemental jurisdiction over any state law claims related to the allegations in this complaint, pursuant to 28 U.S.C. § 1367(c).[11]

The Clerk shall send a copy of this memorandum opinion and the accompanying order to the plaintiff.

Enter:    This 24th day of September, 2009.

*James C. Turk*

Senior United States District Judge

---

[10]A complaint that is dismissed as malicious, frivolous, or with prejudice for failing to state a claim upon which relief may be granted constitutes a "strike" under 28 U.S.C. § 1915(g). See McLean v. United States, 566 F.3d 391 (4th Cir. 2009). Plaintiff is hereby assessed a strike under § 1915(g).

[11]Prisoners do not have an absolute and unconditional right of access to the courts in order to prosecute frivolous, malicious, abusive, or vexatious motions or actions. Demos v. Keating, 33 Fed. Appx. 918 (10th Cir. 2002); Tinker v. Hanks, 255 F.3d 444, 445 (7th Cir. 2001); In re Vincent, 105 F.3d 943 (4th Cir. 1997). Frivolous or malicious filings can and will result in the imposition of a pre-filing review system. Vestal v. Clinton, 106 F.3d 553 (4th Cir. 1997). If such a system is placed in effect, pleadings presented to the court that are not made in good faith and do not contain substance will be summarily dismissed as frivolous. Foley v. Fix, 106 F.3d 556 (4th Cir. 1997); In re Head, 19 F.3d 1429 (table) [published in full-text format at 1994 U.S. App. LEXIS 6655], 1994 WL 118464 (4th Cir. 1994). Thereafter, if such writings persist, the pre-filing system may be modified to include an injunction from filings, and a prisoner can and will be subjected to the imposition of monetary sanctions. See 28 U.S.C. § 1651(a); Fed. R. Civ. P. 11 (b) and (c); In re Martin-Trigona, 737 F.2d 1254 (2d Cir. 1984). Plaintiff is hereby warned of the possibility that frivolous, malicious, abusive, or vexatious filings may result in the imposition of a pre-filing injunction. Cromer v. Kraft Foods of North America, Inc., 390 F.3d 812, 818 (4th Cir. 2004).